301 So.2d 420 (1974)
Alex ANDERSON
v.
JEFFERSON MECHANICAL CONTRACTORS, INC., and Aetna Life and Casualty Company.
No. 6345.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1974.
George J. Kambur, New Orleans, for plaintiff-appellant.
Rene A. Pastorek, Gretna, for defendants-appellees.
Before STOULIG, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiff appeals from a dismissal of his claim for Workmen's Compensation benefits for alleged total and permanent disability.
His employment duties consisted of installing outdoor barbecue grills. On June 5, 1972, after drilling a hole with a post hole digger he encountered difficulty removing *421 the bit from the hole whereupon he yanked it out and immediately felt pain in his back. The pain subsided over-night but on the following day after lifting and carrying a 70-pound barbecue grill a distance of approximately 70 feet he again experienced pain in his back. This pain persisted so that he sought medical attention.
He was initially treated by Dr. John Gordon, a general practitioner and his family doctor, who diagnosed a moderately severe lumbosacral strain and who administered a course of treatment consisting of diathermy, medication and rest. On August 8 he found plaintiff to be asymptomatic and without pain, and he was discharged. However, X-ray photographs had revealed that plaintiff had a congenitally weak back in the lumbosacral area which led Dr. Gordon to advise plaintiff to engage only in light work.
Plaintiff who was 18 years of age at the time of the accident testified that he had never had difficulty with his back before despite the fact that he had engaged in weight lifting and track while in high school and had held jobs which required him to lift heavy objects prior to his employment by defendant in March, 1972. He further testified that when he last saw Dr. Gordon on August 8 he did complain of pain contradicting Dr. Gordon's testimony on this point and that he continued to suffer pain in his back after being discharged by Dr. Gordon until the date of the trial in May, 1973. He took a job late in August, 1972, which involved stock work, including the lifting of cases, but this caused such pain that he gave it up after the first day. Thereafter he continued to experience difficulty especially when he moved furniture and a mattress in his home.
On October 24, 1972, he consulted Dr. Kenneth E. Bogel, a neurosurgeon, who found plaintiff to be in pain with spasms, who diagnosed a chronic lumbosacral strain and who recommended physiotherapy, diathermy and medication. He did not see plaintiff again and was unable to testify as to whether plaintiff had in fact utilized a course of treatment or whether his condition had improved. He was furnished with an X-ray report from Dr. Charles Nice who stated that "there could be an old fracture line through a normal sized transverse process" or some other abnormality. Plaintiff explained that he did not avail himself of treatment pursuant to Dr. Vogel's advice because he was financially unable to do so.
On January 5, 1973, plaintiff consulted Dr. Walter Brent, an orthopedic surgeon, who found no pathological basis for pain and no abnormality other than a congenital defect in the lumbosacral area of his back. In his opinion this did not prevent plaintiff from performing generally heavy labor.
Plaintiff sought medical treatment from Dr. Robert Ruel on three occasions in March, April and May, 1973, and while both counsel in briefs and argument advise us that this doctor testified at the trial the transcript of his testimony is not a part of the record. Neither counsel has asked for a remand so that this testimony can be included in the record and both counsel have provided conflicting summaries of such testimony. We are therefore unable to consider this physician's testimony.
In the meantime, defendants had plaintiff examined by Dr. Howard Nelson, a general surgeon, on June 13, 1972, and Dr. Raymond Horn, an orthopedic surgeon, on September 5, 1972. Dr. Nelson noted on X-ray photographs plaintiff's congenital weak back but felt that it would not render him unable to perform heavy manual labor. He did not consider plaintiff's condition a major abnormality. Dr. Horn found no evidence of disability and concluded that plaintiff could resume his normal duties.
Plaintiff was paid Workmen's Compensation benefits from June 6 until August 8, when he was discharged by Dr. Gordon. Plaintiff contends that his congenital weak back which had caused him no difficulty *422 whatsoever prior to the accident was triggered by the accident so that there resulted a permanent disability in the form of a chronic weak back, preventing him from competing in the job market as a common laborer.
Defendants contend, and the trial court found, that plaintiff's problems were related to his inherently weak back and not to the trauma he sustained on the job.
Plaintiff relies on the proposition that Workmen's Compensation is payable when an accident aggravates or accelerates a pre-existing condition, producing disability. Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973). In that case the Court concluded that plaintiff had adequately established a causal connection between his occupational accident and his disability at the time of the trial. However, in the instant case, upon our review of the entire record we are convinced that plaintiff did not establish that connection with a preponderance of evidence and the trial judge committed no error in dismissing his suit.
Plaintiff acknowledges that he has the burden of proof but insists that he is entitled to a presumption that the accident of June 5, 1972, caused his disability on the basis of his testimony that he was having no difficulty prior thereto, that an accident was proved and that there was a following disability without intervening cause. See Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816. But plaintiff's problem in this case stems from the fact that he had prior to the accident a congenital weak back and he did not establish that after his discharge by his own treating physician, Dr. Gordon, in August of 1972 that his condition was any different than it was before the accident. The following testimony of Dr. Gordon on cross examination is especially significant:
"Q. He had a congenital defect in the back and that was because one of the vertegras didn't set properly on the other, is that in layman's term his problem?
A. Yes, the term was actually his point of support was anterior to where it should have been.
Q. And had you seen him before he ever suffered this accident you would have had him X-rayed and found that birth defect you would have told him not to do any heavy work?
A. Absolutely correct.
Q. When you last saw him on August the 8th, and so far as his low back strain, he was completely asymptomatic?
A. Right.
Q. He had no symptoms whatsoever?
A. Correct.
Q. And he was not complaining of any pain?
A. That's right.
Q. If he engaged in heavy labor I gather that it is your opinion that he would perhaps suffer another strain of the back because of the congenital defect, right?
A. Right."
Thus, he still had the congenital weak back and, according to Dr. Gordon, should refrain from heavy work just as he should have refrained from such work before the accident. After being discharged by Dr. Gordon in August and advised not to perform heavy work he attempted to do so at the end of August and engaged in moving furniture at his home prior to being seen by Dr. Vogel in October. The evidence does not establish that his condition in October was caused more probably by the accident in June than by his activities after being discharged by Dr. Gordon in August superimposed on his congenital weak back.
*423 Plaintiff's reliance on Johnson v. Travelers Insurance Co., supra, and Odom v. Kaiser Aluminum & Chemical Corporation, 282 So.2d 580 (La.App.4th Cir. 1973) is misplaced. While the law is settled that an employer takes an employee as he finds him and that an employee disabled by an accident is not to be denied compensation simply because he was already afflicted with a disease which in ordinary progress might eventually have caused the disability without any accident, and the accident merely induced disability, plaintiff has not borne the burden of proving that he was suffering from any disability after being discharged by Dr. Gordon beyond his congenital weak back. He did not prove that the congenital weak back was permanently aggravated by the accident.
The trial judge found that plaintiff's problems subsequent to his discharge on August 8, 1972, are related to his inherently weak back, not to his on the job trauma. We find no error and accordingly affirm.
Affirmed.