340 So.2d 276 (1976)
Mrs. Eric (Linda) PARKS
v.
INSURANCE COMPANY OF NORTH AMERICA et al.
No. 57797.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*277 John T. Bennett, Riddle, Bennett & Ryland, Marksville, for plaintiff-applicant.
John W. Scott, Stafford, Randow, O'Neal & Scott, Alexandria, Edwin L. Lafargue, Laborde, Lafargue & Kelly, Marksville, for defendants-respondents.
MARCUS, Justice.
Plaintiff, Mrs. Eric (Linda) Parks, instituted suit for workmen's compensation benefits against her employer, Marksville Industries, Inc. (hereinafter referred to as *278 Garan, Inc.) and its insurer, Insurance Company of North America, seeking total and permanent disability payments for a condition allegedly resulting from a form of bronchitis caused, aggravated or precipitated by the working conditions at her place of employment. By supplemental petition, plaintiff made New York Life Insurance Company a defendant, alternatively alleging that if she could not recover under the Louisiana Workmen's Compensation Act, she was entitled to disability payments under a group insurance policy covering the employees at Marksville Industries, Inc. Plaintiff also prayed for penalties and attorney fees against all defendants.
The trial judge rendered judgment in favor of Garan, Inc. and its compensation insurer based on findings that the plaintiff was an unskilled worker, that her illness did not constitute an accident within the contemplation of the compensation law and that the conditions at her place of employment did not cause her illness. Judgment was rendered in favor of plaintiff and against New York Life Insurance Company in the amount of $40.00 per week for the period of plaintiff's disability, which the court determined to be from October 10, 1973 to November 30, 1973. The trial judge denied penalties and attorney fees and assessed costs to New York Life in the amount of $15.00. All other costs were taxed to plaintiff.
From this judgment, plaintiff appealed to the court of appeal[1] whereupon the appeal court affirmed in all respects the findings of fact and conclusions of law reached by the trial court. 326 So.2d 535 (La.App.1976). We granted certiorari to review the correctness of this judgment. 330 So.2d 313 (La.1976).

FACTS
The record reflects that plaintiff, Linda Parks, is a twenty-one year old housewife living in a rural area near Marksville, Louisiana. After brief work experiences in a canning factory and nursing home, plaintiff applied for a position with Marksville Industries, Inc., a division of Garan, Inc., a company manufacturing ready-to-wear garments. Mrs. Parks began working in May, 1973 as a seamstress sewing pockets and yokes onto ladies pants. In the course of her work, plaintiff observed that the process of machine stitching pieces of fabric together generated large quantities of dust and lint which settled atop the sewing machines and on the clothes and bodies of the workers. At the end of each day, plaintiff and her fellow workers used an air vacuum hose provided by Garan, Inc. to remove the accumulated lint from the machines and themselves. The testimony of plaintiff and Mr. Don Fulton, manager of the Garan plant, revealed that, during the period of plaintiff's employment, the Garan facilities were housed in an old converted nightclub. There were no windows in the building and, although the plant was air conditioned, it was necessary to leave the doors of the building open to promote air circulation.
Mrs. Parks testified that in early September, 1973, after working for Garan for approximately four months, she began to experience a sore throat, running nose, and a nagging dry cough. She related that on blowing her nose, it was obvious to her from the content of the mucus discharged that she had been inhaling fabric lint. Although Mrs. Parks continued to work regularly throughout September, she began losing weight and felt gradually worse, until on October 10, 1973, she was stricken with a high fever and forced to consult a local general practitioner, Dr. Bryan C. McCann.
Plaintiff's medical history discloses that as a child she had several episodes of acute bronchitis and on one occasion suffered from whooping cough. While none of plaintiff's sisters had been troubled with respiratory ailments, her two brothers had asthma as children. Plaintiff began smoking *279 in April, 1973 and has continued to do so at the rate of about one pack per day without apparent ill effects to her respiratory system. As an adult, plaintiff has apparently had occasional colds and related respiratory symptoms but she testified at trial that since childhood she has not experienced an attack of acute bronchitis such as she suffered in fall of 1973 while working at the Garan plant.
Dr. McCann testified that when he saw plaintiff on October 10, 1973 he found her to have a temperature of 100. From a description of her symptoms over the last month and a physical examination, he diagnosed Linda Parks' condition as bronchitis with throat infection. Plaintiff was treated with penicillin. On October 12, 1973, Mrs. Parks returned to Dr. McCann; her condition was unchanged. She was administered a different antibiotic by injection for several days but by October 15 her condition had worsened to the extent that hospitalization was necessary. Plaintiff remained in the hospital for four days and was diagnosed as having chronic bronchitis and an unrelated urinary tract infection. Three days after her discharge from the hospital, on October 22, 1973, plaintiff again consulted Dr. McCann complaining of a hard dry cough and abdominal pain; she was treated with injections over the next four days. Dr. McCann testified that, when he next saw plaintiff on November 2, 1973, she had a fever of 101%A and reported having had this temperature for five days. Dr. McCann referred her to a specialist in internal medicine, Dr. M. L. Godley, who immediately hospitalized plaintiff and treated her for allergic bronchitis. Four days later, plaintiff was again discharged from the hospital only to return once more to her physician, Dr. McCann, on November 15, 1973 with a fever of 101%A, a cough, and congestion. Plaintiff was treated with yet another antibiotic supplemented by gamma globulin injections. Subsequent to this last treatment, Mrs. Parks' illness disappeared. On advice of both doctors who treated her, plaintiff did not return to work at Garan, Inc. on any occasion after the October 10, 1973 onset of her acute illness.
At trial, Dr. McCann was extensively examined concerning the nature of plaintiff's illness and its relation to the working conditions at Garan, Inc. He stated that Mrs. Parks' high fever and the presence of pneumococcus bacteria in her sputum indicated that, when she saw him on October 10, 1973, she was suffering from an acute infectious bronchitis. He testified that he did not believe plaintiff's acute episode was related to asthma (even if she did have an asthmatic condition) since he detected none of the characteristic wheezing usually present in an asthmatic attack. Dr. McCann explained that bronchitis is a general term describing an inflammation or infection of the bronchioles. He testified that, in his opinion and after consulting with Dr. Godley, plaintiff during early September and October had experienced a chronic bronchitis, a persistent condition of bronchial inflammation, caused or aggravated by the working conditions at Garan, Inc., and more particularly by inhalation of dust and fabric lint. Dr. McCann noted that these substances constituted non-specific irritants which caused plaintiff's lungs to be inflamed and secrete mucus. It was his testimony that this condition made plaintiff physically more susceptible to the bacterial infection which ensued producing her acute illness of October 10, 1973. Dr. McCann related that "the infectious process was an end result of the inflammation or irritation" and that the exposure to lint and fabric dust was an "aggravating factor if not the cause itself" of her bronchitis. Regarding plaintiff's smoking and other irritants which might have been present in her home environment, Dr. McCann noted that plaintiff's lack of symptoms prior to working at Garan and the non-recurrence of bronchial difficulties after she terminated her employment, suggested that working conditions triggered plaintiff's respiratory problems. In response to questioning concerning skin patch testing, Dr. McCann indicated that, even if plaintiff were non-allergic in a technical sense, fabric dust and lint could nevertheless precipitate irritation and inflammation in a person, such as plaintiff, *280 who had hypersensitive bronchial tubes and a predisposition to respiratory problems. He also testified that it was understandable that plaintiff suffered several relapses of her acute illness even without re-exposure to the irritants at Garan in view of her weakened physical condition. Dr. McCann confirmed that he had advised plaintiff against returning to work at Garan but he also stated, regarding plaintiff's disability, that having once recovered from the fall 1973 episode of acute bronchitis, plaintiff's physical condition returned to its pre-illness state with no residual effects.
Reports written by Dr. Godley,[2] the physician who treated plaintiff during her second period of hospitalization, confirm Dr. McCann's evaluation of Mrs. Parks' illness in all material respects. While he stated that the fabric dust and lint at Garan did not cause plaintiff's acute illness, he nevertheless agreed that such substances would aggravate her already overreactive bronchial tubes.
In anticipation of this litigation, plaintiff was referred for evaluation to two consulting specialists.[3] The first, Dr. A. C. Dalton, a specialist in allergy and immunology, first saw plaintiff on March 8, 1974, at which time she was asymptomatic. Dr. Dalton performed a series of skin patch tests on plaintiff with various known allergens and with a sample of fabric dust obtained from Garan. Since plaintiff had no specific allergic reaction to any of these substances, he concluded that she was not an allergic individual and agreed with Dr. McCann's finding that her acute illness in mid-October of 1973 was infectious in nature. Dr. Dalton made it clear that the absence of allergic reaction has no influence on whether or not a substance can operate as a non-specific irritant to the pulmonary system. Like Dr. McCann, he did not think the fabric dust and lint was causative of her acute attack but that the inhalation of these substances could aggravate her underlying pre-disposition toward bronchitis. He specifically stated that her condition was aggravated and the "stage was set" by the dusty atmosphere at Garan, which he felt was "a contributing factor" in her illness.
Dr. Hans Weill, a specialist in pulmonary disease and internal medicine, examined plaintiff for evaluative purposes on April 1, 1974. The doctor found her asymptomatic with only a slight reduction in forced expiratory flow indicating a mild sub-clinical asthmatic condition. Dr. Weill, like the other physicians who examined plaintiff, was of the opinion that her acute symptoms were consistent with a viral or bacterial infection. He conceded that a non-specific irritant such as dust or fumes could produce transitory respiratory symptoms including inflammation and secretion of mucus in an individual with underlying hyperreactive bronchial tendencies. While Dr. Weill's testimony concerning the nature and causes of plaintiff's medical problems was less favorable than that of the other physicians, it did not in our opinion directly refute the theory of illness proposed by her treating physician.

RIGHT TO COMPENSATION
In order to recover benefits under the Louisiana Workmen's Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. Disability is compensable only if it results from a work-related accident. La. R.S. 23:1031; Gorbach v. Prager, Inc., 310 So.2d 604 (La.1975); Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Hence, the first issue presented for our consideration is whether or not an accidental injury occurred.
Defendants contend that the acute illness suffered by plaintiff does not fall within the definition of accidental injury as contemplated by the workmen's compensation law. We do not agree.
The terms "accident" and "injury" for the purpose of the workmen's compensation *281 statute are defined in La.R.S. 23:1021 as follows:
(1) `Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.
(7) `Injury' and `Personal Injuries' includes only injuries by violence to the physical structure of the body and such disease and infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.
We note at the outset that the courts of this state have consistently accorded the terms of the Workmen's Compensation Act a liberal construction in order to effectuate its beneficent purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the costs in channels of commerce. Danielsen v. Security Van Lines, Inc., 245 La. 450, 158 So.2d 609 (1963); Geist v. Martin, Decker Corp., 313 So.2d 1 (La.App. 1st Cir. 1975). Louisiana is among the many jurisdictions that look to the employee to determine whether there was an unexpected and catastrophic effect upon him in deciding that an injury is accidental. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). We have held that extraordinary physical stress and strain is not essential to the definition of disabling accident: when the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968). More particularly, we have recognized that the fact that a condition may commonly be referred to as an illness or disease does not thereby preclude its classification as an accident. Jennings v. Louisiana Southern Life Insurance Co., 290 So.2d 811 (La.1974). In Jennings, we noted that among other conditions frequently termed as diseases, heart disease, stroke, heat stroke, herpes zoster (shingles), cancer and "bends" have all been treated as compensable accidents within the contemplation of the Workmen's Compensation Act. We are satisfied, therefore, that the acute illness suffered by plaintiff in the instant case constitutes an "accident" as that term is defined in the compensation act and interpreted in our jurisprudence. The medical testimony is clear that during her episode of acute bronchitis plaintiff suffered an injury, I.e., "violence to the physical structure of her body." The injury was accidental because it was unexpected and unforeseen and occurred suddenly producing at the time objective symptoms. We are confirmed in our conclusions by the well-reasoned opinions in Geist v. Martin Decker Corp., 313 So.2d 1 (La.App. 1st Cir. 1975) and Gotte v. Cities Service Oil Co., 298 So.2d 920 (La.App. 3d Cir. 1974) wherein hepatitis and pneumonia were both held to be within the statutory definition of accident when the contraction of these conditions was causally related to plaintiffs' employment.
The next issue for our consideration is whether the acute bronchitis contracted by plaintiff was caused, aggravated or precipitated by the working conditions of her employment. Our jurisprudence demonstrates that it is not necessary that an accident be caused by extraordinary activities of an employee or that said activities be the exclusive cause of an accidental injury. It is only necessary that the accidental injury be caused or precipitated by the usual and customary actions, exertion, or other factors directly connected with the employment. Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). It is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor. Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969). We have recently held, moreover, that an accident which aggravates or accelerates a pre-existing condition is compensable even where disability is not caused by a single or specific incident. Chism v. Kaiser Aluminum & Chemical Corp., 332 So.2d 784 (La.1976).
*282 A careful examination of the record convinces us that the aggravation of plaintiff's predisposition toward respiratory difficulties and her contraction of acute bronchitis was contributed to or precipitated by the working conditions at her place of employment. Accordingly, we find that plaintiff has demonstrated an accidental injury arising out of and in the course of her employment.
We cannot agree, however, that plaintiff is totally and permanently disabled. The pertinent question to be answered in the resolution of this issue is whether or not the accident has changed plaintiff's condition so as to render her unfit for her former employment. Bertrand v. Coal Operators Casualty Co., supra. Plaintiff argues that, inasmuch as her physician has advised her not to return to work at Garan, Inc. or any other similar employment, she is totally and permanently disabled. It is true that a worker is ordinarily deemed totally and permanently disabled whenever he is unable to perform work of the same or similar description to that which he performed before the accident. La.R.S. 23:1221(2); Futrell v. Hartford Acc. & Indem. Co., 276 So.2d 271 (La.1973). This general rule, however, operates only when it is proven that the alleged disability is causally connected to a work-related accident. We have held that total and permanent disability benefits may be payable when a plaintiff has fully recovered from such an accident, only if a residual condition resulting from the accidental injury substantially increases the possibility of recurrence of a disabling episode. Bertrand v. Coal Operators Casualty Co., supra.
In the instant case, the medical testimony as well as that of plaintiff herself indicates that she has fully recovered from her acute illness and that she now enjoys a state of health comparable to that which existed prior to October 10, 1973. While it is obvious that plaintiff was temporarily totally disabled from that date until her acute illness terminated, she has now been returned to her pre-illness condition and there is no evidence that the acute bronchitis attack left any residual effects whatsoever. The inadvisability of plaintiff's working in a garment factory is no greater now than it was when she commenced working for Garan in May, 1973. We are of the opinion that where, as here, plaintiff fails to demonstrate that her physical condition after an acute illness is altered in any respect, she cannot recover total and permanent disability payments. In short, plaintiff's disability to work in a garment factory is not related to the accident which she sustained. We note that a similar resolution of this issue was reached in Anderson v. Jefferson Mechanical Contractors, Inc., 301 So.2d 420 (La.App. 4th Cir. 1974), wherein the appeal court held that total and permanent disability benefits were not warranted where an accident admittedly aggravated a congenitally weak back, but where evidence suggested that continuing medical problems after recovery were related to the inherent congenital condition rather than the accident sustained.
Accordingly, we reverse the judgment of the court of appeal which affirmed the trial judge's decision that plaintiff's acute bronchitis was not an accident compensable under the Louisiana Workmen's Compensation Act. The record amply supports, however, a finding that plaintiff was temporarily totally disabled on October 10, 1973 and for a period extending seven weeks thereafter. Plaintiff is therefore entitled to receive the stipulated amount of $51.35 per week for that period. She is additionally entitled to recover medical expenses incurred in the treatment of her acute illness in the following amounts: $426.00 for treatment received at Marksville General Hospital; $506.40 for treatment received at St. Francis Cabrini Hospital; $125.00 for medical services of Dr. Bryan McCann, representing the adjusted fee after deduction for treatment of unrelated urinary tract infection; $72.00 for medical services received at Fireside Clinic.
We reject plaintiff's prayer for penalties and attorney fees. There is no evidence in the record to support a finding that Garan, Inc. and its compensation carrier *283 were arbitrary or capricious in their refusal to pay compensation benefits.

DECREE
For the reasons assigned, the judgment of the court of appeal in favor of Garan, Inc. and its compensation carrier, Insurance Company of North America, is reversed and set aside and judgment is rendered herein in favor of Mrs. Eric (Linda) Parks and against Garan, Inc. and Insurance Company of North America, jointly and in solido, for the full sum and compensation of $51.35 per week beginning October 10, 1973 and extending for a period of seven weeks thereafter with legal interest on each of the weekly installments from its maturity until paid and medical expenses in the sum of $1,129.40, together with legal interest thereon from date of judicial demand until paid, and all costs of these proceedings, including expert fees as fixed by the trial court. In all other respects, the judgment of the court of appeal is affirmed.
SUMMERS, Justice (dissenting).
I cannot agree that the trial court and Court of Appeal should be reversed on this purely factual issue.
NOTES
[1] New York Life Insurance Company answered plaintiff's appeal to the court of appeal. Subsequent to judgment affirming the trial court's decision, however, New York Life Insurance Company did not apply for writs to this court. Hence, the judgment against it has now become final.
[2] These reports were admitted in evidence on stipulation of counsel.
[3] Depositions of these physicians were admitted on stipulation of counsel.