CUTRER, Judge.
This is a workmen’s compensation suit for death benefits filed on behalf of the widow and five children of the decedent, Gerald Bruney. The defendants are the City of Lake Charles (the employer) and Hartford Accident & Indemnity Company (the workmen’s compensation insurer). The plaintiff appeals the trial court judgment dismissing the suit. We affirm.
The undisputed facts are: Gerald Bruney was employed as a captain in the Lake Charles Fire Department for 18 years prior to his death on March 18, 1978. In January of 1978, Captain Bruney, during a routine physical examination, was diagnosed by Dr. George Anderson as having gallstones. Dr. Anderson referred Bruney to Dr. F. W. Bennerscheidt. After consulting with Dr. Bennerscheidt on January 81, 1978, Bruney elected to have surgery for the removal of the gallstones. The surgery was scheduled for February 6, 1978 in Lake Charles Memorial Hospital. Bruney was to be admitted on February 5, 1978.
On the evening of February 4,1978, Bru-ney’s last day of work, he and his crew responded to a fire at an abandoned residence in south Lake Charles shortly after 8:00 P.M. At the scene of the fire, Bruney and his crew undertook to protect an exposed residence near the burning house. After the blaze was out, Bruney entered the remains of the burned house to help extinguish any burning embers. There was testimony by firemen at the scene that there was some smoke, but that it was not a problem and masks were not worn. During the fire, Bruney complained of pain in his side and informed the district chief that he was going to go home after he returned to the station. Shortly after 11 o’clock, Bru-ney and his crew returned to their station and shortly thereafter, Bruney left to go home.
When Bruney returned home, he complained to his wife of abdominal pain and nausea. According to Mrs. Bruney, he was coughing and vomiting. He was restless the remainder of the night. The following afternoon, February 5th, Bruney was admitted to the hospital for the surgery. Routine X-rays taken of Bruney’s chest, according to Dr. Bennerscheidt, revealed no lung infiltration. The blood counts were within normal range.
Surgery was performed as scheduled on February 6,1978. During the course of the surgery, it was determined that a stone was lodged in the distal part of the common bile duct. The stone was removed during the surgery. Following surgery, Bruney developed serious complications, ultimately resulting in his death. The doctors who testified at trial were unanimous in the conclusion that the primary cause of death was massive gastrointestinal hemorrhage six weeks after surgery as a result of a stress ulcer. This type of ulcer develops from protracted serious sickness.
Other secondary causes of death included focal acute pancreatitis, associated along with pancreatic and duodenal abscesses following gall bladder surgery, bronchial pneumonia, congested lungs, pleural adhe-sions, enlarged liver and spleen, kidney failure, and aspiration of the blood in the tra-cheobronchial tree.
The trial judge found that the plaintiff did not meet its burden of proof in its attempt to show a causal connection between Bruney’s employment and his death.
*952 The issues on appeal are: (1) Whether the trial judge erred in failing to find smoke inhalation contributed to the death of Gerald Bruney; and (2) whether the trial judge erred in finding that plaintiff failed to prove a causal connection between the lodging of a gallstone (leading to Bruney’s death) and Bruney’s work as a fireman.
In order to recover workmen’s compensation benefits the plaintiff must establish that the decedent received a personal injury by an accident arising out of and in the course of his employment. Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976). The claimant must show more than a possibility that the disability was caused by or aggravated by the employment. Quine v. Ideal Cement Co., 351 So.2d 1303 (La.App. 1st Cir. 1977), writ den., 353 So.2d 1035 (La.1978).
It is well established that the burden of proof in a workmen’s compensation claim is not relaxed. In Prim v. City of Shreveport, 297 So.2d 421 (La.1974), the Supreme Court stated:
“Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testimony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture.” (Citations omitted:)
SMOKE INHALATION
All of the physicians who testified agreed that the primary cause of death was massive gastrointestinal hemorrhage. All agreed that among the secondary causes of death was Bruney’s pulmonary condition.
Plaintiff contends that Bruney’s inhalation of smoke on the evening of February 4, 1978 contributed to the development of his lung condition which was a secondary cause of death. Further, plaintiff contends that this inhalation was an “accident injury for purposes of workmen’s compensation benefits.”
In support of this position, the plaintiff points to the testimony of Dr. Dalmacio S. Paraguya. During Bruney’s post-operative illness, Dr. Paraguya was called in to assist in treating Bruney. He testified 'that Bru-ney had developed edema of the lungs. He also stated that there was infiltration for pneumonia present in the lungs. He stated that the edema was a result of a combination of things, including an enlarged heart and lung infiltrate. He stated that pan-creatitis would be a factor in developing lung complications. Dr. Paraguya testified that he later learned of Bruney’s history of smoke inhalation, which he felt could have played a role. He stated smoke inhalation damages the cilia in the bronchial tubes which help the lungs cleanse themselves. Smoke inhalation, combined with the effect of anesthesia on the lungs, could have made the lungs vulnerable to complications. Dr. Paraguya did not discuss the level of smoke inhalation necessary to damage the cilia.
There was testimony by firemen present at the February 4th fire that there was some smoke inhalation. All stated that the smoke at the fire was not significant, did not necessitate the wearing of masks, and did not present a problem to the firefighters. None of the firemen who testified could recall Bruney having any difficulty due to smoke inhalation.
We conclude that there was no manifest error in the trial court’s finding that the smoke inhalation, if any, did not contribute to Bruney’s death. Nothing more than a possibility has been shown that smoke inhalation could have contributed to Bruney’s death. Plaintiff must show more than a possibility to prove its case. Quine v. Ideal Cement Co., supra.
DISLODGED GALLSTONE
Plaintiff contends that Bruney’s activities during the fire of February 4th caused a *953 gallstone to be dislodged from the gall bladder and to become impacted in the common bile duct.
Bruney complained of pain in his side while engaged in the firefighting episode on February 4th. Dr. Bennerscheidt testified the results of Bruney’s hospital admission chemistry profile indicated that the stone became impacted within 48 hours before the test. The testimony of the physicians also indicated that when a stone is impacted and obstructs the common bile duct, the onset of pain follows very shortly. Plaintiff argues this testimony supports its contention that since he first experienced pain during the firefighting, this activity caused the stone to move.
Dr. Bennerscheidt testified that it is conceivable that physical activity could cause a stone to become dislodged because the activity could add to the effect of gravity on the stone. Dr. Bennerscheidt stated that the most active factor in causing stones to become dislodged, however, is the presence of food in the gastrointestinal tract. Food acts as a stimulus causing the gall bladder to contract and the cystic duct to open. Further, he stated a stone could become dislodged during sleep. Dr. Bennerscheidt also stated that it is not possible with any degree of reasonable medical certainty to determine what caused the gallstone to become dislodged, and that a stone may be dislodged at anytime.
Dr. Robert E. Brierty testified that the only documented cause of dislodging of á stone, of which he was aware, is the presence of food in the gastrointestinal tract, causing the gall bladder to propel bile and the stone out of the gall bladder into the common bile duct.
The trial judge found that the plaintiff failed to prove that Bruney’s physical activity while fighting the fire caused the stone to move. We find no manifest error in this conclusion. The plaintiff has, at best, demonstrated only a possibility that the stone was dislodged during the firefighting because of physical activity. There is sufficient evidence to support the trial judge’s finding that there was no causal connection between Bruney’s death and his employment activity. As stated in Quine v. Ideal Cement Co., supra:
“. . the plaintiff must show more than a possibility that the disability was caused by or aggravated by the employment.”
The plaintiff has not shown it was more probable than not that the physical activity involved in firefighting caused the stone to move. Plaintiff has not, therefore, carried her burden of proof.
For the assigned reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.