CURRAULT, Judge.
This appeal arises from a judgment in favor of defendant, Celotex Corporation (Celotex), dismissing an action for worker’s compensation benefits brought by plaintiff, Walter James.
The facts reveal that plaintiff, Walter James, was employed by Celotex for thirty years from 1946 until he retired in 1975 at the age of sixty-five. During that time he worked in the asphalt department as well as the tile and interior products department. Plaintiff’s various duties included working with processes involving the coating of boards with asphalt as well as the turning and stacking of the coated boards. While working in the plant, plaintiff was exposed to some degree of coal tar pitch volatiles, the chemical components of which include medically documented carcinogens. While employed in the interior products department, he was exposed to some level of silica dust particles.
On May 27, 1982, plaintiff filed suit for worker's compensation alleging that he contracted a lung disease related to his employment. He was later diagnosed as having lung cancer.
Trial was held on November 28, 1983, January 18 and January 19, 1984. Plaintiff was unable to attend the trial due to the advanced state of his lung cancer and subsequently died on January 22, 1984. Judgment was rendered on May 10, 1984 in defendant’s favor, dismissing plaintiff’s suit.
Thereafter, an appeal of that judgment was perfected on plaintiff’s behalf.
Appellant specifies as error the trial court finding that plaintiff had not met his burden of proving the causal connection between his employment and his lung cancer.[1]
Appellant argues that the medical testimony coupled with plaintiff’s deposition testimony satisfied the burden of proof required for a causal connection between the illness and the employment. A plaintiff in a worker’s compensation action must prove he contracted an employment-related disease by a preponderance of the evidence. Howard v. Johns-Manville Sales Corporation, 420 So.2d 1190 (La.App. 5th Cir.1982); Hebert v. Lake Charles American Press, 427 So.2d 916 (La.App. 3d Cir.1983).
The rules relative to causation are set forth in Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982), a case involving a trauma to plaintiff’s arm which ultimately resulted in a cancerous tumor growth. There the Louisiana Supreme Court stated:
*449 “The plaintiff-employee in a workmen’s compensation case bears the burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). Nevertheless, it is not necessary for the experts to determine the exact cause of the disability in order for the employee to recover. The complaint need show only by a preponderance of the evidence that the work accident caused the disability. Allor v. Belden Corp., 393 So.2d 1233, 1236 (La.1981); Lucas v. Insurance Company of North America, 342 So.2d 591, 595 (La.1977). “... Furthermore, medical testimony ‘must be weighed in the light of other credible evidence of a non-medical character, such as a sequence of symptoms or events in order to judicially determine probability’ Schouest v. J. Ray McDermott & Co., 411 So.2d 1042, 1044-45 (La.1982).”
In determining causal connection, the court distinguished medical causation from legal causation as follows:
“[6] The lower courts based their decisions upon the assertions of Dr. Gun-derson, Dr. Gore and Dr. Romsdahl that in their opinion a trauma could not cause a tumor and that trauma would have no effect upon the eventual progression of the disease. The lower courts believed that the medical evidence was sufficient to deny compensation. They failed to distinguish the ‘medical’ meaning of cause from the ‘legal’ meaning of cause. When the doctors speak of cause they are essentially speaking of etiology — the origin of disease; what initially causes a disease. When courts and lawyers speak of cause they are concerned with the question of whether the particular incident in question contributed to the plaintiff’s disability by making manifest symptoms previously unnoticed. ‘Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence.’ Haughton v. Fireman’s Fund American Insurance Companies, 355 So.2d 927, 928 (La.1978).
“Furthermore, ‘[i]t is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor....’ Parks v. Insurance Company of North America, 340 So.2d 276, 281 (La.1976). See Allor v. Belden Corp., supra at 1237; Bertrand v. Coal Operators Casualty Co., supra [253 La. 1115, 1146, 221 So.2d 816, 827-28 (1969)].” At pages 832, 833.
In the case of Hebert v. Lake Charles American Press, supra, the plaintiff developed a respiratory ailment following his prolonged exposure to toxic chemicals present in his occupational environment. The defendant employer sought to establish that plaintiff’s occupational lung disease was due to a pre-existing asthmatic condition. There the Louisiana Third Circuit Court applied the Hammond rationale and discounted the argument that the disability could have been brought on by causes other than those related to plaintiff’s employment. The court held that the crucial aspect of the case was that plaintiff was in essentially good health prior to the prolonged exposure to toxic chemicals and that, thereafter, the symptoms of respiratory disease manifested themselves, “thereby creating the presumption of causal connection.” 427 So.2d at page 919.
Thus, appellant argues, pursuant to Hammond, supra, and Hebert, supra, that plaintiff in this case is entitled to the legal presumption of a causal connection between his disabling lung cancer and his occupational exposure to industrial carcinogens at Celotex. Based on these cases, plaintiff submits that the record of this matter clearly establishes that plaintiff was a healthy man when he began his employment with Celotex in 1946 and that following a continuous employment exposure to medically documented carcinogens, the plaintiff’s disabling condition (cancer of the lung) appeared and continually manifested itself.
*450 According to plaintiff, asphalt was shipped to the plant to dip or spray building materials manufactured by defendant. He further testified that the fumes and dusts were pervasive throughout the plant during the 1940’s, 1950’s and 1960’s. He stated that in the early years the asphalt coated his clothing to the extent that the clothes were stiff and testified that no masks were provided the workers. He also testified that the inside area was smoky from dust due to the process involved in cutting the boards. When he left in 1975, he stated he was getting short of breath, a condition which ultimately worsened.
Defendant called two witnesses, Mr. Ampton LeCompte and Mr. Harvey Killeen, regarding the plant layout and conditions. Mr. LeCompte became the foreman in the asphalt department in the 1970’s. Prior to then, he worked in maintenance for thirteen years. He stated that the asphalt came to the plant in liquid state by tank cars and was then transferred to stills by pumping the material through a pipeline. It then was drained into a pan, &k feet wide by 30 feet, by opening a valve. On cross-examination, he stated the odor of asphalt fumes was detectable in the department. He admitted that he did not work with Mr. James, however; and, prior to becoming foreman, he did not spend a significant amount of time in the asphalt department.
Mr. Killeen was the quality control supervisor for thirteen years (1971-1984). He began working with Celotex in 1951 in engineering and his first job involved time studies. He remained in engineering for thirteen years and then supervised exterior products for the six years prior to his employment as quality control supervisor.
Mr. Killeen testified that he spent a couple months in the department in 1951 performing the actual operations in connection with his time studies. Mr. Killeen stated that the fumes were not detectable unless one placed his head directly over the area of the hot asphalt. Both he and Mr. Le-Compte insisted that the machines had always been, to their knowledge, vented and enclosed.
The expert testimony related to the carcinogenic effects of chemicals found in asphalt fumes agreed that studies regarding exposure to the type of chemicals found in asphalt fumes detected an association with lung cancer. Defendant’s experts were Dr. Robert Jones, certified as an expert in chest and pulmonary disease, and Dr. Ye-hia Hammed, a PhD in engineering and industrial hygiene. Plaintiff’s experts were Mr. Laurence R. Durio, whose education included a master’s degree in industrial hygiene and certification by the American Board of Industrial Hygiene, and Dr. Victor Alexander, Chairman of the Occupational Medicine Department at Oschner Clinic. The experts generally agreed that cancer can be caused by unknown factors as well as the known factors including smoking, individual susceptibility, personal characteristics and habits, carcinogen exposure and genetic composition.
Mr. Durio, plaintiff's expert in industrial hygiene, noted that the type of cancer (ade-nocarcinoma) plaintiff suffered from is classically related to asphalt vapors. Given the hypothet of a period of exposure over thirty years, in his opinion the disease would be more likely to be caused by the exposure to the coal tar pitch volatiles found in asphalt fumes. Dr. Alexander, plaintiff's expert in occupational medicine, spoke to plaintiff at home, took a lengthy history and briefly examined plaintiff. After a detailed discussion of various studies regarding lung cancer and in particular adenocarcinoma, coupled with the history given to him by plaintiff, he stated, “I believe from my reasonable medical certainty that Mr. James’s occupational exposure over a period of thirty years was a significant contributing factor to the development of his lung cancer.” Other contributing factors included silica dust and smoking, but the doctor pointed out that smoking is usually associated with squamous cell carcinoma and only weakly associated with adenocarcinoma.
*451 Defendant’s first expert witness was Dr. Jones who examined plaintiff in 1983 and saw him again a few months later after the cancer was diagnosed. He felt it was possible, but not probable, that the cancer was job-related although he agreed that ben-zo(a)pyrene, a chemical found in asphalt fumes, is a carcinogen. While he didn’t agree with the studies regarding silica, he stated studies show the combined effects of the two increased the potency of the benzo(a)pyrene, thus producing a greater likelihood of cancer. He pointed out, however, that those studies were conducted on animals. In his opinion, based on a recent British study, smoking was the most likely cause of plaintiff’s particular type of cancer. In regard to a study conducted on roofers[2], which plaintiff’s experts relied upon to a great extent, he' differentiated the roofer’s exposure from plaintiff’s exposure. The doctor stated that the situations were not analogous as the roofers were in much closer proximity to the asphalt fumes in an unvented work environment.
Defendant’s final expert was Dr. Yehia Hammad. Dr. Hammad was consulted by Celotex and conducted studies at the plant in 1981, 1982 and 1983. Based on his own studies as well as literature involving steel plants where workers were exposed to coke, he stated the coal tar pitch volatiles can be carcinogenic, but that there is a dose and duration relationship. He testified that those studies are the basis upon which the National Institute of the Division of Safety & Health developed a standard accepted by OSHA. Comparing the high level of exposure shown in the studies of the coke ovens, the lesser level of exposure of the roofers, and plaintiff’s exposure at Celotex, he stated plaintiff’s exposure was too minimal to associate the disease with his occupation. His opinion was based on the various national and international studies, his own studies of this plant environment, information on the environment given to him by defendant’s employees and a hypothesis placing plaintiff in the asphalt area for fifteen years, but working 25-40 feet from the hot substance which was enclosed and ventilated to the outside. He noted that the roofing studies did not differentiate between smokers and nonsmokers, and pointed out that the study compared those workers to the general population which also included smokers and non-smokers. He commented that some of the more recent literature does show a relationship to adenocarcinoma, while others do not. However, he stated that the number of adenocarcinomas found in smokers is three times that of nonsmokers. On cross-examination, he agreed that the roofing studies did not indicate actual individual length of exposure, but divided the length of employment into periods of time.
As to the plaintiff’s allegation regarding exposure to silica dust, Dr. Hammad stated that, assuming the plant operations remained the same over the years and comparing dust studies conducted by Aetna in 1971 and OSHA in 1980, his study reflected a constant level well below the standard considered by OSHA to constitute exposure. Based on a hypothesis utilizing plaintiff’s employment history in packing and stacking boards and his history of working in the area where boards were cut for prolonged periods of time, Dr. Hammad stated it is highly unlikely that a worker would develop a fibrogenic lung disease from the baseboard.
We have thoroughly reviewed the evidence in this case. It is contradictory as to the conditions of appellant’s work environment in regard to the actual operations, the levels of fumes and dust and the exposure time. The excellent testimony of all the experts shows differing opinions as to the effects of the exposure to the carcinogens and silica dust and the studies relied upon were at times interpreted differently.
It is well established that in order to reverse factual findings of the trial court, it is necessary for the appellate court to find manifest error. Arceneaux v. Do *452 mingue, 365 So.2d 1330 (La.1978). Taking the evidence as a whole, we find that the appellee rebutted the presumption in appellant’s favor and that the trial court was not clearly wrong in finding the evidence insufficient to prove a causal relationship between appellant’s illness and his employment. Thus, we hold that the trial court did not err in finding appellant failed to meet his burden of proof by a preponderance of the evidence.
Therefore, after a review of the law and evidence, the judgment of the trial court is hereby affirmed. Costs of the appeal are to be assessed in equal proportions between the parties.
AFFIRMED.

. Appellee filed an answer raising issues related to costs and the propriety of dismissal without prejudice, but failed to include the issues in the brief. Consequently, those issues are deemed abandoned pursuant to Rule 1-3 of the Uniform Rules of the Courts of Appeal.

. Hammond, Selikoff, Lawther and Seidman, Inhalation of Benzpyrene and Cancer in Man, 271 Annals of the New York Academy of Sciences 116, (1976).