619 So.2d 1261 (1993)
Patrick C. ROBINSON, M.D., Plaintiff-Appellant,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
No. 92-731.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*1262 Frank Meredith Walker Jr., Lake Charles, for Patrick C. Robinson, M.D.
Michael Glenn Hodgkins, Lake Charles, for The Travelers Ins. Co.
Before STOKER and DECUIR, JJ., and CULPEPPER,[*] J. Pro Tem.
STOKER, Judge.
The issue in this worker's compensation case is whether plaintiff's degenerative disc disease, caused by a combination of his preexisting scoliosis and his physical activities as a pediatrician, is compensable under the Worker's Compensation Act.
The hearing officer denied plaintiff's claim. We reverse.

FACTS
Plaintiff, Dr. Patrick Robinson, was a self-employed pediatrician. He was diagnosed as having idiopathic scoliosis (curvature of the spine from unknown causes) when he was about fourteen years old. In January 1988, Dr. Robinson, then thirty-three years old, began having back pain, particularly when he bent over a patient on the examination table.
In May 1988, Dr. Robinson consulted Dr. Eddie Dean, who diagnosed the early stages of degenerative disc disease, an arthritic condition, which was caused by a combination of the scoliosis and constant bending and stooping over patients on the exam table. In his medical report, Dr. Dean noted, "He [Dr. Robinson] is concerned about the outcome of this, and what his future holds, as to whether to change occupations." Dr. Dean recommended surgery, which Dr. Robinson decided not to have. Conservative treatment through physical therapy quickly alleviated the pain. However, Dr. Robinson began to experience back pain again the following winter *1263 (1988-1989) which was not eased by physical therapy. Dr. Robinson's back pain progressively worsened through spring 1989. Finally, upon the advice of his physicians, Dr. Robinson closed his pediatrics practice in July 1989. He now works in hospital administration and draws disability benefits.
On October 29, 1988, Dr. Robinson purchased worker's compensation insurance from the Travelers' Insurance Co., which covered himself as a sole practitioner. Dr. Robinson's final series of bouts of pain, which finally increased to the point of disability, occurred during the policy period. After closing his office in July 1989, Dr. Robinson filed a claim for worker's compensation. Travelers denied benefits on the basis that his injury was not the result of an "accident" and because his injury was not unexpected and unforeseen.
Dr. Robinson then filed this suit against Travelers. The Office of Worker's Compensation hearing officer held in favor of Travelers, reasoning and making findings of fact as follows:
"Claimant suffers from scoliosis, that is, an abnormal curvature of the spine, which was diagnosed in his teen years. In June of 1989, claimant quit his practice of pediatric medicine as a result of the continuous bending and stooping he did as a pediatrician which aggravated a degenerative disc problem in his lower back. This aggravation caused so much pain and discomfort he could no longer continue his practice.
"This Office agrees with claimant's interpretation of the pre-1990 law, concerning the determination of compensability for an aggravation to a pre-existing condition. The present claim, however, is denied. On December 7, 1988 claimant entered into an agreement or contract with defendant for worker's compensation coverage for the period of October 29, 1988 to October 29, 1989. But claimant had experienced very intense pain to his lower back a year before he quit his job as a doctor, in June of 1989, or several months before he entered the contract with defendant. (See Depo. of Dr. J.E. Smith, pp. 19, 20, entered into evidence as p-1 and the WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY, entered into evidence as p-7.)
"The conclusion must be drawn by this Office that claimant, a medical doctor, intelligent and realistic about the complications of scoliosis, entered into the insurance contract knowing that the intense lower back pain he had been experiencing would force him to quit his work as a doctor. He entered into the contract with the defendant with the intention of shortly thereafter collecting compensation for a disability he knew would occur, not with the intention of insuring against a work-related injury that may or may not happen in the future.
"It is clear that the disability suffered by claimant in June of 1989 was not an unexpected or unforeseen event; therefore, not a compensable injury. The disability was something for which claimant had made preparations, as evidenced by his purchasing worker's compensation insurance a few months before he claimed he was disabled. It is not the type of disability or situation for which a worker's compensation carrier should be liable. It is noted that claimant's effort to insure for his disability was not an act of fraud, but simply an act based on an misunderstanding of worker's compensation law.
"The present claim is denied with prejudice and at claimant's cost."
Dr. Robinson appeals this judgment. We reverse.

OPINION
Dr. Robinson argues on appeal that the hearing officer clearly erred as a matter of law in denying his claim on the basis that his disabling degenerative disc disease was not an unforeseen or unexpected event. He further contends that he should not be required to pinpoint one particular instance of bending which resulted in his disability, since the medical evidence clearly established that his disabling injury resulted from his work as a pediatrician. We agree.
It is clear from a close reading of the hearing officer's opinion that he based his *1264 ruling on a moral judgment of the plaintiff's action rather than the law.
In 1989, LSA-R.S. 23:1021(1) defined an accident as: "an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury". Although the definition was subsequently changed by Act 454 of 1989, the change does not affect this lawsuit. Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La. 1992); Nelson v. Roadway Express, Inc., 588 So.2d 350 (La.1991); Leon v. Crowell & Spencer Lumber Co., 151 La. 932, 92 So. 389 (1922). The law applicable to this case is that in effect prior to the amending Act.
A claimant must prove that a work related accident occurred. Louisiana courts have consistently interpreted the work related accident requirement liberally. Bruno, supra. There is an accidental injury when a worker's normal duties cause a physical breakdown, an accidental result. Nelson, supra. It is well settled in Louisiana that an "accident" exists when heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a preexisting condition. Bruno, supra. Parks v. Ins. Co. of N. America, 340 So.2d 276 (La.1976). The fact that a condition may commonly be referred to as an illness or disease does not thereby preclude its classification as an accident. Parks, supra; Jennings v. La. Southern Life Ins. Co., 290 So.2d 811 (La. 1974).
It is immaterial that the disability could have been brought on by causes other than a work-related trauma if, in fact, trauma on the job which meets the standards of accidental injury is a disabling factor. Parks, supra; Chism v. Kaiser Aluminum & Chem. Corp., 332 So.2d 784 (La.1976). When the ligaments, cartilages or organs of the body give way because of exertion on the job, the injury is compensable. Chism, supra.
The law is settled that a preexisting disease or infirmity of an employee does not disqualify the worker's compensation claim if the work injury aggravated, accelerated or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Walton v. Normandy Village Homes Assoc., Inc., 475 So.2d 320 (La.1985); Tassin v. New Orleans Delivery Serv., 550 So.2d 1214 (La.App. 5th Cir.1989). An accident which aggravates or accelerates a preexisting condition is compensable even where disability is not caused by a single or specific incident. Parks, supra; Chism, supra; Cutno v. Neeb Kearney & Co., Inc., 112 So.2d 628 (La.1959). Also, Roszell v. Nat. Union Fire Ins. Co., 602 So.2d 87 (La.App. 3d Cir.), writ denied, 605 So.2d 1365 (La. 1992).
All of the medical experts agreed, and the hearing officer found, that the degenerative disc disease in Dr. Robinson's spine was caused by a combination of his preexisting scoliosis and the physical requirements of practicing pediatrics, his usual and customary work activities. Although such deterioration may have eventually occurred anyway, the medical experts concluded that his job activities aggravated the degeneration, preventing him from continuing his work as a pediatrician.
The hearing officer and defendant both emphasized the fact that Dr. Robinson's injury was not unexpected or unforeseen and that he had allegedly purchased his worker's compensation insurance in anticipation of the disability. However, the jurisprudence has generally rejected the requirement that an injury must be unexpected or unforeseen, reasoning that employees whose injuries are quite predictable due to preexisting conditions are protected as completely as normal workers by the Act. Wheat v. Ford, Bacon and Davis Const. Corp., 424 So.2d 293 (La.App. 1st Cir.), writs denied, 429 So.2d 155, 158 (La.1983). Also, Chism, supra; Renfrow v. Caddo Parish Police Jury, 155 So. 291 (La.App. 2d Cir.1934); Malone & Johnson, 13 La.Civil Law Treatise: Workers' Compensation § 215 (West 1980). If the requirement of "unexpected and unforeseen" were given literal effect, it would arguably disqualify every employee who had preexisting disabilities *1265 or who was abnormally susceptible to injury from receiving worker's compensation benefits. The courts have not so interpreted the statute.
Next, we note that Dr. Robinson testified that he was not able to point to a single specific incident of bending over which precipitated his degenerative disc disease. Under the well settled jurisprudence, he is not required to; he need only show that his work aggravated or caused his disability. The hearing officer found that he had proven causation and we agree.
The defendant-appellee places great reliance on two cases from this circuit, Melancon v. Mills, 467 So.2d 621 (La.App. 3d Cir.1985) and Rubin v. PPG Industries, Inc., 527 So.2d 1 (La.App. 3d Cir.1988), writ denied, 528 So.2d 155 (La.1988). Counsel for Travelers urges that these two cases established the position in this circuit regarding the law in effect prior to 1989 interpreting the meaning of LSA-R.S. 23:1021(1). Travelers contends that, regardless of liberal interpretations given to this provision elsewhere, the law of the circuit was exactly the same as provided by Acts 1989 No. 454, which redefined "accident" as an unexpected or unforeseen, actual, identifiable, precipitous event happening suddenly or violently, ... and directly producing at the time objective findings of injury which is more than simply a gradual deterioration or progressive degeneration."
To begin with the Travelers position is not correct. The Melancon case went off on the failure to establish a chain of causation. In Melancon we said: "Absent any evidence of an accident, either in the nature of a precipitous event or physical breakdown caused by the performance of the plaintiff's usual and customary duties, there exists no chain of causation." (Emphasis supplied.) Rubin simply quoted Melancon.
In any event, the law of this circuit (as well as in all courts of Louisiana) is the law laid down by the Louisiana Supreme Court. That court decided Nelson v. Roadway Express, Inc., supra, in 1991 but construed the law as it existed prior to the 1989 amendment. In Nelson the supreme court stated "[t]here is an accidental injury when a worker's normal duties cause a physical breakdown, an accidental result." In 1992 the supreme court decided Bruno v. Harbert Intern., Inc., supra, and again construed the pre-1989 law. In Bruno the supreme court was even more pointed and emphatic. It expounded the liberal interpretation of the concept of work-related accidents which we have set forth earlier in this opinion. Considering the pronouncements in Nelson and Bruno, we find no justification for giving to Melancon and Rubin the construction that Travelers would have us give.
Finally, we note that the hearing officer decided that a worker's compensation insurer should not be liable in this type of situation; i.e., where a sole proprietor with a preexisting condition which renders him more likely to incur a disabling injury, insures himself against the occurrence of that event. This rationale effectively discriminates against sole proprietors (or other such persons listed in LSA-R.S. 23:1035), who elect to be covered by the Worker's Compensation Act. For example, suppose that Dr. Robinson had been the employee of a clinic or hospital, and his employer purchased worker's compensation insurance. Prior to the purchase, Dr. Robinson had suffered some back pain due to the combined effects of scoliosis and his work activities. Subsequent to the purchase, Dr. Robinson's spine degenerated and his back pain increased to the point that he was completely disabled from working. Dr. Robinson's employer would be liable to him for worker's compensation benefits under the Worker's Compensation Act, since his disabling degenerative disc disease was caused by work conditions which aggravated his preexisting scoliosis. Foreseeability would not be an issue. Therefore, the fact that Dr. Robinson was his own employer and purchased worker's compensation insurance for himself should not change the result under the Worker's Compensation Act. See and compare the rationale in U.S. Fire Ins. Co. v. State, *1266 Worker's Comp. Second Injury Bd., 590 So.2d 1310 (La.App. 1st Cir.1991).
Of course, there is a difference between insuring an employee's injuries and insuring an employer's injuries. But the difference lies in the position of the worker's compensation insurer. If the insurer is providing insurance to the employer against his liability for his employees' injuries, the insurer is insuring against unknown risks, that is, disabling accidents which may befall unknown third persons, the employees. However, when the insurer provides coverage on the sole proprietor himself, who is the other party to the contract of insurance, the insurer is in a position to have more complete knowledge about the risks it is insuring against. For instance, it can require a preinsurance health exam or inquire as to preexisting conditions and disabilities.
In essence, Travelers Insurance, a highly sophisticated business entity, freely agreed in contract to provide worker's compensation insurance for Dr. Robinson, without further inquiry. Dr. Robinson did not misrepresent the state of his health. Travelers now complains that it has made a bad business deal and wants to be released from its contractual obligations. We cannot do so.

CONCLUSION
Therefore, the hearing officer erred as a matter of law in holding that Dr. Robinson had not suffered a compensable injury and in denying benefits. The parties stipulated that, if compensable, Dr. Robinson would be entitled to the maximum amount of supplemental earnings benefits. We remand the case to the Office of Worker's Compensation for a determination of the amount of benefits owed and the amount of credits, if any, for which Travelers Insurance is entitled.

DISPOSITION
For the reasons given, the judgment of the Office of Worker's Compensation is reversed. The case is remanded for further proceedings consistent with the law and the views expressed herein. Costs of this appeal are assessed to The Travelers Insurance Company.
REVERSED and REMANDED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.