KNOLL, Justice,
dissenting.
Because I find NIHL is neither a covered occupational disease under any version of La.Rev.Stat. § 23:1031.1, nor a personal injury by accident under any applicable version of the LWCA, I respectfully dissent from the majority’s affirmation of the judgment of the court of appeal and find plaintiffs’ tort claims against their employers for NIHL are not barred by the exclusive remedy provision of the LWCA. Finding no manifest error, I would reinstate the judgment of the district court.
As well established, any interpretation of the provisions of the LWCA must take into account the basic history and policy of the compensation movement. Stelly v. Overhead Door Company of Baton Rouge, 94-0569 (La.12/8/94), 646 So.2d 905; Roberts v. Sewerage & Water Bd. of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 345. Likewise, as both Stelly and Roberts establish, although this Court liberally construes the coverage provisions of the LWCA, it narrowly construes the LWCA’s immunity provisions. Stelly, 646 So.2d at 910; Roberts, 634 So.2d at 346. Given the decades of alleged exposure— from 1956 to the time of trial — the cumulative nature of the hearing loss, and the various amendments to LWCA over this substantial period of time, my examination of each version of the applicable LWCA provisions will proceed in a linear fashion.

History of the LWCA

The history of workers’ compensation began when the state of New York passed the first workers’ compensation statute in the United States in 1910. Four years later, following the submission of a lengthy report and recommendation by a Commission tasked by Governor L.E. Hall to study and draft laws providing for compensation to injured employees, our Legislature enacted one of the first workers’ compensation statutes in the South. In its report to the Legislature, the Commission detailed there was “conservatism required” in enacting such a system | sof laws, because of the diverging approaches by the differing states. Furthermore, it was noted the concept of workers’ compensation in Louisiana was “all in the experimental state.” La. Sen. Journal Reg. Sess. 1914, p. 33. 'The Commission thus found conservatism was required because “no matter how moderate the act may be in its provisions, it is a radical departure, being suddenly adopted through the United States, from the line of thought which prevailed up to 1910.” Id. Against that backdrop, La.Rev.Stat. § 23:1031 (1914) originally provided an employee who “receives personal injury by accident arising out of and in the course of [his] employment” is to receive compensation.[1]

Occupational Disease

However, it was not until 1952 that the Legislature established express statutory authority for the coverage of occupational diseases under the LWCA. 1952 La. Acts No. 532. As then enacted, La.Rev.Stat. § 23:1031.1 provided, in pertinent part:
Every employee who is disabled because of the contraction of an occupational disease as herein defined ... shall be entitled to the compensation provided *312 in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
(A) An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed. ...
1.Poisoning by or other disease resulting from contact with
(a) the halogens, halogen compounds, and halogenated hydrocarbons
(b) alkaline materials
(c) arsenic, phosphorus, silenium, sulfur, tellurium, and their compounds
(d) oxygen, nitrogen, carbon, and their compounds
(e) cyanides and cyanogen compounds
(f) lead and lead compounds
(g) metals other than lead and their compounds
|4(h) aliphatic hydrocarbons and their nitro, diaso and amino compounds
(i) aromatic and cyclic hydrocarbons and their nitro, amino and other compounds
(j) alcohols
(k) organic and inorganic acids and their derivates and compounds
(il) esters of aliphatic, aromatic and inorganic acids
(m) aldehydes
(n) ketones
(o) ethers, glycols, glycol ethers, and their compounds
(p) phenol and phenolic compounds
2. Diseased condition caused by exposure to X-rays or radio-active substances.
3. Asbestosis.
4. Silicosis.
5. Dermatosis.
6. Pneumoconiosis.
La.Rev.Stat. § 23:1031.1 (1953).
While other states enacted compensation statutes providing blanket coverage for all occupational diseases, our Legislature chose a schedule approach, providing compensation for “contraction of an occupational disease,” as defined, to be the exclusive remedy of the employee or his dependent. The statute explicitly provided coverage for two categories of “occupational disease.” One category included specifically listed diseases, namely diseased conditions caused by exposure to X rays or radioactive substances, asbestosis, silicosis, dermatosis, and pneumoconiosis. The other category identified diseases by enumerated causative agents. No one disputes NIHL was not a specifically enumerated occupational disease, nor was excessive noise a listed hazardous or toxic substance. Therefore, NIHL was not a compensable occupational disease under the 1952 version of the LWCA. See, e.g., Rando v. ANCO Insulations, Inc., 08-1163 (La.5/22/09), 16 So.3d 1065 (finding no foundation for expansive reading of statute considering limiting words of statute and adoption of scheduled approach).
| ¡Although almost every Louisiana legislative session until 1975 amended the LWCA one way or another (mostly to change the amount of compensation or the various listed disabilities, including the addition of tuberculosis in 1958 or to make minor adjustments dictated by experience in the work place), the amendments did not alter the conservative nature of the LWCA until the major amendments of 1975. By that point it had become appar *313 ent numerous employment-related diseases did not fit into the categories of occupational diseases enumerated in the 1952 version of the LWCA, and so the Legislature abandoned the schedule approach in favor of comprehensive coverage and revised La.Rev.Stat. § 23:1031.1 to amend the definition of occupational disease by removing the list of specific diseases and substituting the following:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.
1975 La. Acts No. 583; see also La.Rev. Stat. § 23:1031.1 (1976).
Unquestionably, the 1975 Act’s treatment of the definition of occupational disease encompassed far more diseases than the scheduled categories enumerated in the 1952 version; however, the question for this Court is whether the revised definition encompasses NIHL. After careful study and contemplation, I find it does not.
As stated above, an interpretation begins with the language of the statute, giving the words their “generally prevailing” and “technical” meanings. La. Civ.Code art. 11. And in a technical sense, gradual hearing loss is not a “disease” or | fi“illness” anymore than a sunburn is a disease or illness. E. Berton Spence and Carey W. Spencer, Accrual of Hearing Loss Actions Under the FELA: The Objective Standard Pre-Vails, 24 Cumb. L.Rev. 113 (1993). As the expert evidence shows, NIHL is hearing loss resulting from exposure to sound of sufficient duration and intensity to produce a decrease in auditory function. Such exposure produces instantaneous hearing impairment, and in this regard, it is a traumatic injury. Yet unless the noise is remarkably intense, the damage occurs in small increments, a bit more each day the worker is exposed, rendering this loss a cumulative traumatic injury. Thus, the worker does not lose enough hearing to fall below the “normal” threshold until several years have passed. A disease, by contrast, is usually thought of as something one is exposed to (a bacteria or virus) that then progresses on its own to a logical conclusion. NIHL does not, however, progress after exposure ceases, any more than does a sunburn after one comes in from outside.
Interestingly, Merriam-Webster Dictionary defines “disease” as “an illness that affects a person, animal or plant; a condition that prevents the body or mind from working normally.” Merriam-Webster.com, “Disease” (9/10/14). Oxford Dictionary defines it as “a disorder of structure or function in a human, ... especially one that produces specific signs or symptoms or that affects a specific location and is not simply the result of physical injury.” Oxforddictionaries. com, “Disease” (9/10/14); see also, Black’s Law Dictionary, “Disease” (6th ed. 1990)(“Deviation from the healthy or normal condition of any of the functions or tissues of the body.”). Defendants cite to both resources for the proposition that “[cjlearly Plaintiffs’ hearing loss meets these definitions of disease.” Yet we note, NIHL is not an illness; rather, it is an injury resulting from physical trauma to the nerve follicles in the ear caused by excessive noise expo *314 sure over a duration of 17time. Moreover, the spacious definition of “a condition that prevents the body from working normally” is applicable to almost any traumatic injury — a broken limb, a punctured lung, crushed trachea, severed artery — all of which would not under the common and general understanding of the term be considered diseases any more than hearing loss would.
Meanwhile, the medical definition provided by Merriam-Webster defines disease as “an impairment of the normal state of the living animal or plant body or one of its parts that interrupts or modifies the performance of the vital functions, is typically manifested by distinguishing signs and symptoms, and is a response to environmental factors (as malnutrition, industrial hazards, or climate), to specific infective agents (as worms, bacteria, or viruses), to inherent defects of the organism (as genetic anomalies), or to combinations of these factors.” Merriam-webster.com, supra. See also Black’s Law Dictionary, supra (“An alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions, and causing or threatening pain and weakness.”). While admittedly hearing loss has been categorized as an impairment, see, e.g., La.Rev.Stat. § 23:1221(4)(p) and Malone & Johnson, 13 La. Civ. Law Treatise: Workers’ Compensation Law and Practice § 286 (5th ed. 2010), hearing itself is not a vital function. Note, we are not in any way attempting to define the term “disease” herein — that is the prerogative of the Legislature. Rather, we merely find, under its generally prevailing meaning, hearing loss is not a disease.
Moreover, the Legislature has amended the current definition of occupational disease since 1975 to exclude some diseases, such as degenerative disc disease, spinal stenosis, arthritis, heart-related or perivas-cular disease, and mental illness, see 1989 La. Acts 454 § 2, and to include carpal tunnel syndrome. See 1990 La. Acts 943. Interestingly, the Legislature has never added gradual hearing loss. Its incorporation of carpal tunnel syndrome with a similar degenerative effect is indicative of the fact the post-1975 definition of occupational disease did not sufficiently cover same, thus necessitating its subsequent explicit incorporation.[2]
Significantly, I note, if gradual hearing loss was an occupational disease, the Legislature would not have had to enact a statute specifically providing coverage for firefighters’ development of occupational gradual hearing loss. 2006 La. Acts 649; La.Rev.Stat. § 33:2581.1.[3] Moreover, the *315 firefighters’ statute itself explicitly provides the gradual hearing loss compensated therein “shall, for purposes of this Section only, be classified as a disease or infirmity connected with employment.” La.Rev.Stat. § 33:2581.1(A)(emphasis added).[4]
Simply stated, although the LWCA is broadly interpreted to include coverage, this Court is still bound by the language of the statute, and given this ^restriction, this Court must leave it to the Legislature to expressly provide for coverage herein, as it did with carpal tunnel syndrome and in the firefighters’ provision.

Personal Injury by Accident

Moreover, I agree with the lower courts gradual hearing loss does not meet the definition of a personal injury by “accident” under any version of La.Rev.Stat. 23:1021(1). As discussed above although our LWCA has always from its very inception provided compensation to an employee who “receives personal injury by accident arising out of and in the course of [his] employment,” La.Rev.Stat. § 23:1031 (1914-2014), the Legislature, in 1918, amended the LWCA to explicitly define the terms accident and personal injury:
(1) “Accident” means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.
[[Image here]]
(7) “Injury” and “Personal Injuries” includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
La.Rev.Stat. § 23:1021 (1918).
As an initial matter, the expert evidence at trial establishes gradual hearing loss by its very nature does not happen either “suddenly or violently,” nor does it produce “at the time objective symptoms of an injury.” Rather, like water wearing on stone, the damage is incrementally minute, sustained gradually over time, and only apparent after years of constant exposure to pressure. Thus, NIHL would not constitute a personal injury by accident under the explicit wording of this provision. But though the purpose of the 1914 statute may have initially been to cover only work-related “accidents,” with the advancement of the industrial 1 ^revolution and the growing number and types of diseases arising from work-related activities, a liberal interpretation was given to the statute, which “effectuated its beneficent purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the costs in channels of commerce.” Rando, 08-1163 at p. 11, 16 So.3d at 1077 (quoting Parks v. Insurance Co. of North America, 340 So.2d 276, 281 (La.1976)). Consequently, judicial interpretation of the statute often resulted in occupational .illnesses and diseases being classified as “accidents” under the LWCA:
Louisiana is among the many jurisdictions that look to the employee to determine whether there was an unexpected and catastrophic effect upon him in de *316 ciding that an injury is accidental. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972). We have held that extraordinary physical stress and strain is not essential to the definition of disabling accident: when the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, the statutory requirements for an accidental injury are present. Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1968). More particularly, we have recognized that the fact that a condition may commonly be referred to as an illness or disease does not thereby preclude its classification as an accident. Jennings v. Louisiana Southern Life Insurance Co., 290 So.2d 811 (La.1974). In Jennings, we noted that among other conditions frequently termed as diseases, heart disease, stroke, heat stroke, herpes zoster (shingles), cancer and ‘bends’ have all been treated as compensable accidents within the contemplation of the Workmen’s Compensation Act.
Parks, 340 So.2d at 281.
Two lines of interpretation thus developed. One line of cases made it clear where an injury, such as a heart attack or stroke, occurs and the manifestation of that injury is sudden or violent, then that sudden manifestation — even if it was the culmination of a slowly developing malady — would be an “accident” under the LWCA. This Court’s decision in Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972) is an example of this interpretation. In Ferguson, an employee received a paycheck that was lower than he expected, after which he became angry and went to argue about the amount with his employer. During the argument, the employee felt a flash of pain followed by paralysis. Although an argument with his employer was not in and of itself “a violent or sudden event,” the Ferguson court found the employee had suffered an injury from an accident, stating: “Although he received no blow or trauma .... the injury was accidental because it was unexpected and unforeseen. It happened suddenly and violently. It produced at the time objective symptoms of an injury.” Id. at 869.[5]
A second line of cases suggested when an employee is exposed to work conditions, which either aggravate a pre-existing condition or cause a symptomatic degeneration in the employee’s health, and a distinct event occurs where the symptoms become disabling, then this may also be characterized as an “accident.” In Parks, the employee was a seamstress who was bothered by conditions of the factory where she worked. After working for four months, plaintiff started to experience a sore throat, running nose, and nagging cough. Shortly after these symptoms presented, plaintiff lost weight and contracted a fever. Days later, she was hospitalized with chronic bronchitis and sought workers’ compensation benefits from her employer. The court found, although the seamstress could not point to one event which had precipitated those acute symptoms requiring hospitalization, she had in fact suffered an “accident.” Relying on Ferguson, the Court stated:
*317 We are satisfied, therefore, that the acute illness suffered by plaintiff in the instant case constitutes an ‘accident’ as that term is defined in the compensation act and interpreted in our jurisprudence. The medical testimony is clear that during her episode of acute bronchitis plaintiff suffered an injury, i.e., “violence to the physical structure of her body.” The injury was accidental because it was unexpected and unforeseen and occurred suddenly producing at the time objective symptoms. We are confirmed in our conclusions by the well-reasoned opinions in Geist v. Martin Decker Corp., 313 So.2d 1 (La.App. 1st Cir.1975) and Gotte v. Cities Service Oil Co., 298 So.2d 920 (La.App. 3d Cir.1974) wherein hepatitis and pneumonia were both held to be within the statutory definition of accident when the contraction of these conditions was causally related to plaintiffs’ employment.
Parks, 340 So.2d at 281. Still, to find an accident under these terms, our courts required at least some identifiable event or incident during employment where the employee could demonstrate a palpable injury.[6]
My research shows gradual hearing loss has never been classified as an accidental injury under the statute although two cases have been often cited for that proposition. While these cases, Chatelain v. American Can Co., 344 So.2d 1180 (La.App. 4th Cir.1977), and Quine v. Ideal Cement Co., 351 So.2d 1303 (La.App. 1st Cir.1977), writ denied, 353 So.2d 1035 (La.1978), explain physical strain is not needed for an injury to be considered an “accident” under the LWCA and regular workplace conditions can cause or contribute to an “accident,” in each case the plaintiff *318 complained of hearing loss during the period of employment — that is, there was an acute, identifiable occurrence of injury— and both concerned a hearing loss injury that created a conclusive and final event: the inability of the worker to perform his duties. See Quine, 351 So.2d at 1304 (“On May 22, 1974, plaintiff was unable to continue his work”);[7] Chatelain, 344 So.2d at 1181 (“requested a change of positions ... because of hearing problems May 5, 1975”).[8] Moreover, both employees’ claims were ultimately dismissed for a failure to prove causation, not on the issue of coverage under the LWCA as an accidental injury.
In this case, however, the plaintiffs’ hearing loss did not lead to a sudden breakdown or force the employees to cease working; instead, the loss was not discovered for decades. Moreover, given its gradual and insidious nature, gradual hearing loss is neither palpable nor “sudden,” “acute,” or “identifiable.” As the experts opined herein, it is a cumulative permanent loss of hearing that develops gradually over many years of exposure to hazardous noise.[9] Accordingly, we find the gradual hearing loss at issue would not fall within the expansive jurisprudential interpretation of “accident” as defined by the 1918 version of the LWCA.
Against this background of a very broad judicial reading of the term, the Legislature, in 1989, amended the definition of “accident.” See 1989 La. Acts 454. La. Rev.Stat. § 23:1021(1) now provides:
“Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective *319 findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
La.Rev.Stat. § 23:1021(1)(2014).
Of particular relevance here is the addition of the requirement that an accident must be an “actual, identifiable, precipitous” event “directly” producing objective findings of an injury that is “more than simply a gradual deterioration or progressive degeneration.” “This additional language was clearly intended to reverse the established trend in the jurisprudence to permit coverage for disability which appears to be clearly work-related but does not fit the statutory definition of accident.” Malone and Johnson, supra § 216. As gradual hearing loss would not |lfifall within the expansive purview of the jurisprudential interpretation of the preceding definition, it most assuredly will not fall within the current definition. Therefore, I find, although the injury in question does arise out of and in the course of employment, neither its cause nor its onset is sudden or violent, and therefore, NIHL is not a personal injury by accident under any version of La.Rev.Stat. §§ 23:1021 or 23:1031.
Because the injury at issue here is neither a personal injury by accident nor an occupational disease, it is not covered by the LWCA and, thus, not compensable therein. Moreover, we note with significance no Louisiana court has ever awarded compensation for gradual hearing loss under the LWCA. As our jurisprudence has long held, if a certain type of injury is not compensable under the LWCA, even though clearly work-related, then it is not subject to the exclusivity provision, and there is no tort immunity. Boyer v. Crescent Paper Box Factory, 143 La. 368, 380, 78 So. 596, 600 (1917). Therefore, I find the district court did not legally err in allowing this matter to proceed in tort, and I would reverse the judgment of the court of appeal which as this opinion has clearly shown constituted a drastic departure from our jurisprudence and interpretation of the LWCA since its very inception.

. Similarly, La.Rev.Stat. § 23:1031 presently provides, in pertinent part: "If an employee ... receives personal injury by accident arising out of and in the course of his employment, his employer' shall pay compensation. ...”

. La.Rev.Stat. § 23:1031.1 currently provides, in pertinent part:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-' related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

. La.Rev.Stat. § 33:2581.1 (A) provides, in relevant part: "Any loss of hearing which is ten percent greater than that of the affected employee's comparable age group in the general population and which develops during em *315 ployment in the classified fire service in the state of Louisiana shall, for purposes of this Section only, be classified as a disease or infirmity connected with employment....”

. Significantly, as plaintiffs note, during the discussion of Senate Bill 204 (later enacted as Act 649) in the House Municipal Committee Meeting held on June 1, 2006, Representative Katz noted gradual hearing loss was not otherwise compensable as an occupationdl disease. See http://house.louisiana.gov/H_Video/ 2006/Jun 2006.htm.

. The required "injury by accident” has thus been found to have occurred in instances of heart attack, see, e.g., Guidry v. Sline Indus. Painters, Inc., 418 So.2d 626 (La.1982); cerebral hemorrhage, see, e.g., Griffin v. Employers’ Liability Ins. Co., 186 So.2d 349 (La.App. 4th Cir.1966); hernia, see, e.g., Hill v. J.B. Beaird Corp., 19 So.2d 295 (La.App. 2d Cir.1944); abscessed lung, see, e.g., Stiles v. International Paper Co., 39 So.2d 635 (La.App. 2d Cir.1949); spontaneous pneumothorax, see, e.g., Dortch v. Louisiana Central Lumber Co., 30 So.2d 792 (La.App. 2d Cir.1947).

. See also Melder v. Century Telephone Enterprises, Inc., 413 So.2d 1325, 1328 (La.App. 3d Cir.1982) (worker with pre-existing back condition was aggravated by the demands of the job such that worker’s ultimate injury—a herniated disc—was deemed an “accident”); Harper v. Kast Metals Corp., 397 So.2d 529 (La.App. 2d Cir.1981) (plaintiff with pre-exist-ing arthritis whose employment left him with sore wrists testified that on a specific date, he twisted one of his wrists; found to be an "accident”); Hall v. Georgia-Pacific Corp., 390 So.2d 948, 949 (La.App. 2d Cir.1980) ("accident” when plaintiff with pre-existing automobile injury worked in lumber mill and experienced a “sudden popping” in his shoulder in the course of working with the plywood); Romero v. Otis Intern., 343 So.2d 405, 409-10 (La.App. 3d Cir.1977) (hearing loss when working with air hammer was an "accident” because "a part of [plaintiff's] body, his inner ear, suddenly gave way while he was discharging his usual and customary duties”); Chism v. Kaiser Aluminum & Chemical Corp., 332 So.2d 784 (La.1976) (plaintiff received a series of occupational injuries for which he sought medical care; after returning to work and performing the same strenuous duties, the pain became so severe he was hospitalized with a herniated disc; characterized as "accident”); Lum v. Employers Mut. Liability Ins. Co. of Wis., 216 So.2d 889 (La.App. 2d Cir.1968) (plaintiff's job required him to stuff giblets into frozen chickens; plaintiff suffered from pre-existing arthritis; court found he suffered "accident” because on one occasion while stuffing chicken plaintiff felt a sudden “popping” of wrist); Comoletti v. Ideal Cement Co., 147 So.2d 711, 719 (La.App. 1st Cir.1962) (hearing loss while "shooting kilns” accident occurring "suddenly and unexpectedly as a result of [plaintiff’s] exposure to noise of excessive and unusual intensity on a specific date, namely, July 28, 1960.”). In one instance, a court suggested the definition of "accident” did not require a final concluso-ry event; however, this interpretation was dependent on a work injury caused by the aggravation of a pre-existing condition. McCoy v. Kroger Co., 431 So.2d 824, 829 (La.App. 2d Cir.1983) ("In our view the current jurisprudential definition is such that an ‘accident’ has occurred within the meaning of the compensation act where the conditions of employment provide continual strain or trauma as here, or exposure, as in Parks, ... and these events cumulatively combine to aggravate a pre-existing condition so as to disable the employee even though each individual event in itself is very minor in character.”).

. The employee in Quine had complained of hearing loss for four years and sought medical treatment before his hearing loss prevented him from performing his duties. Although the court set forth the analysis related to the definition of "accident” under the LWCA, its focus centered on the plaintiff's failure to show his hearing loss was caused by the conditions of his employment and not caused by Meniere’s disease.

. In Chatelain, plaintiff alleged the loud noises associated with his employment forced him to request a change in position with his employer, after which he sought permanent disability. The district court found the plaintiff did not prove an accident. The court of appeal, however, agreed "with appellant that extraordinary physical stress and strain is not essential to the definition of disabling accident .... [though] the real issue before us is whether the plaintiff sustained his burden of proof of causation of the hearing loss.” Chatelain, 344 So.2d at 1181-82. Finding plaintiff failed to prove causation, the appellate court affirmed the district court's dismissal of plaintiff's claim.

. Notably, in Chatelain v. Am. Can Co., 387 So.2d 670, 671 (La.App. 4th Cir.) (Chatelain II), writ refused, 394 So.2d 275 (La.1980), the court held:
Accepting plaintiff's petition's allegations as true, his petition would state a cause of action for workers’ compensation and it might therefore be argued that the judgment appealed from is not wholly correct. However, the context is that plaintiff has already tried and lost a suit for workers' compensation, 344 So.2d 1180, this court finding that he did not prove his hearing problems were caused by his work environment. Thus, insofar as the petition is viewed as stating a cause of action for workers' compensation, defendant's exception of res judicata would require its dismissal. And, to the extent that plaintiff seeks any recovery other than workers' compensation, he does not state a cause of action because of the exclusivity of workers' compensation, R.S. 23:1032.
Any reliance on this case for the proposition a claim for gradual occupational hearing loss sounds in workers' compensation as an accidental injury, however, would be misplaced as the preceding decision did not dispose of the issue of coverage under the LWCA or decide whether the injury would fall under accident or occupational disease, and its holding was specific to the petition therein.